243121. We will next hear Blaine v. Mystere Living & Healthcare No. 243121. Counsel, you may proceed. Thank you, Your Honor. May it please the court, I'm going to try to reserve a little bit of time for rebuttal, but I'll try to stop myself. So in granting the summary judgment, the district court failed to draw inferences in favor of the plaintiff and applied incorrect standards of law, including binding Supreme Court precedent in this matter, to both plaintiffs' retaliation and discrimination claims. Well, where is the materially adverse employment action? Well, I think the materially adverse employment action isn't necessarily the standard that applies here. A materially adverse act is what applies in the retaliation context under White. Well, what did the plaintiff, I mean, she says that she had to leave earlier than she wanted to leave. After she had given her resignation, she was paid in full for the period of time involved. And there's not a suggestion that if she had wanted to stay around and kiss everybody goodbye, that she could have done that. I don't think there's anything in the record to state that she was allowed to stay there. They were told that. Well, there's nothing to the contrary. Right, and I think that's a jury question. And drawing inferences in favor of the non-moving party, which we are, I think that other employees, including Darcy Schnoor, referred to Jennifer as terminated. Jennifer Richard-Ferger is terminated. Well, are you denying that she did not resign? She expressed an intent to resign on November 9, 2021. Well, she said more than an intent. Yeah. She said, I'm resigning as of X. Right, and she expected to. That's not just an attempt. Well, an intent, and so I'm sorry to correct you there. But I believe that her intent was to resign on November 23, 2021. She didn't get to. No, her intent was to resign on that date and get two weeks of termination pay. Well, she was expecting to continue working. She wasn't expecting to get termination pay for those two weeks. From her deposition testimony, she wanted to say goodbye to her coworkers. She wanted to say goodbye to her residents. She had been there for seven years. She loved her job. She didn't want to leave. Unfortunately, the circumstances of her complaints, the harassment, is what led her to leave. And you've abandoned any constructive discharge.  Correct?  Yes. So what happened here is effectively paid leave. I think that's one characterization of it. And I think that's an inference that can be drawn in the moving party, which I think is the incorrect inference to draw. In White, even, there was a suspension with pay that the Supreme Court found was sufficient to support a retaliation claim. And here, I mean, you could effectively argue it's the same thing. How is there a suspension? There's not a suspension, but there is a- Well, but you said in White it was a suspension. Is there a suspension here? There is a period where Jennifer was not working but was being paid otherwise. And why isn't that paid leave? Again, I think that's a characterization for sure. Why isn't it an accurate characterization? Well, I think it's not an accurate characterization because usually paid leave is something that sometimes there's an inference that it's requested. Sometimes there's an inference that it's a- But what if someone's put on administrative leave? Yes, certainly if an employer decides to put someone on administrative leave. And when is that an adverse action? When it's tied to protected activity. When it's tied to- What's your authority for that? What would be my authority? I think like White would be certainly authority there that I think if you have, and certainly McDonnell Douglas, if you have a causal connection between a materially adverse act or in the Muldrow context, if there's some harm that is connected to gender or other protected activity, then that would be constituting harm, some sort of adverse act. And again, materially adverse act seemingly is the standard under White. And I think White is often used to state that there should be some sort of substantial material harm. And I think the context of White was sometimes there are petty slights, trivial slights that normally are not actionable. But of course, their stated context matters. And here, I think the context is, we have an employee who loved her job, who really wanted to continue working throughout her notice period from the resignation on November 9th through November 23rd. I don't understand what you just said. I'm sorry? I do not understand your last statement. Do you remember what it was? I do, so I'm trying to get back to that. So in White, the court stated that petty slights are usually non-actionable. However, context matters, right? And in White, the context was a suspension with pay and then reassignment of job duties within the job description. And the jury found that there was a causal connection between the protected activity and the harm there. And here, I think that there is that causal connection. Well, I'm looking at White, and it says that for a retaliation adverse action, a reasonable employee would have found the challenged action materially adverse, which well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Isn't that the standard we're looking at? Yes, and on my brief, I also argued that in the context of Muldrow, that's extra, in Muldrow, they state that standard and then state it as frankly extra textual. Before we leave the standard here, the challenged action is what? What's the challenged action? The challenged action would be the termination on November 12th, 2021. Well, the challenged action is telling her that her last day is November 12 and she'll be paid through November 23, correct? Yeah. Why would that dissuade someone from bringing to the attention to the employer the concerns that she had previously brought to the attention of the employer? Is there anything in the record to suggest that she wouldn't have brought her concerns to the attention of the employer if she was gonna be given this paid period of leave? I think there's evidence in the record from Darcy Schnoor and from Jim Blaine that the message that they were sent was shut up or get out. And several other employees left because of the handling of this. And I think the- But this isn't a shut up or get out. This is, we're gonna pay you for another 11 days. Right. That's it. Yeah, and monetary harm is not a necessary element of employment discrimination claim nor retaliation claim. Both Muldrow and White stand for that. Well, if she hadn't resigned and sent a letter to that effect, your argument might be a little stronger. Right. She said, I'm resigning because I want to. And how do you turn that into an adverse employment? Either a materially adverse employment, or sorry, a materially adverse act or some harm under Muldrow. Under the- Muldrow, the standard for there is sex discrimination. Correct.  Yeah, but the claim we're talking about now isn't the sex discrimination claim. It's the retaliation claim. Right. The White case set the standard for the retaliation claim. So why do you go to Muldrow? How can you even go to Muldrow? Again, I think Muldrow is informative because the text of the discrimination and the retaliation provisions are almost identical. They state that you shall not discriminate against people because of a protected category or because of a protected activity. There's no standard of harm, and that's what Muldrow, that's how Muldrow was decided. To add words to a statute is to change it. Congress didn't intend to, in Justice Kavanaugh's concurrence, he states discrimination is harm. And I think retaliation is also harm. And we want to promote people to have access to this apparatus to complain of. Is there any indication in Muldrow that it is modifying the standard for adverse action in a retaliation case? I believe that there's a very short sentence. Frankly, this extra textual test, I think is the best indication. In Muldrow, they did not have a retaliation claim in front of them, so they did not decide that. And so I think using the reasoning of Muldrow, that extension to a retaliation claim, they could be read coterminously. And so going back to the materially adverse act, again, I believe that the statements from Jen Blaine, from Darcy Schnoor, these employees who had left, you can draw an inference that everyone leaving, they didn't think that complaints would be taken seriously. This is being- That seems to be exactly what you argued in district court, constructive discharge. And I thought I heard you tell Judge Matheson that you're no longer arguing constructive discharge. And so constructive discharge seems to be not only not what you're arguing here, in other words, a preservation issue, but it seems to me to be the exact opposite of what you're arguing. Constructive discharge is ordinarily based on the fact that I'm gonna resign, but I really didn't have any choice. Your argument now is not that she resigned because she didn't have a choice, but that what they did by telling her that she couldn't stay another 12 to 14 days to say goodbye to the staff and residents would have chilled any other ordinary person from making a similar disclosure. Did you make that argument in district court? The chilling argument, no, in the district court- Did you make any argument that, yeah, okay, well, if that's the standard, which I think you earlier told Judge Matheson, extra textually or not, that that is the standard, and you didn't argue in district court that the standard was satisfied, how can we reverse? I think we can reverse on a couple of different grounds. One, I think you can find that Muldrokes since retaliation claim, but if you're going to- Okay, well, walk me through that. I mean, I just, I don't understand. If you acknowledge that the standard is chilling an ordinary person from pursuing this disclosure, and you didn't argue that that was satisfied, how does our interpretation of Muldrow affect that analysis? Are you saying we ought to overrule our precedent? I think that White could be overruled in light of Muldrow. Well, but how can the three of us do that? Are you saying we ought to embark to overrule our precedent? Well, and I want to wrap up, and I want to answer your question, but I want to wrap up briefly. I certainly think that it could just be, the retaliation standard can be read by the text of the statute. I think that would be a great way to apply the facts of the case here. So, again, I want to reserve some time, so I appreciate it. Thank you, counsel. Okay. May it please the court. My name is Whitney Casement. I'm with Stephenson Brand Law Firm out of Topeka, Kansas, and I represent the appellee, Wellsville Health, which is actually Mystere Living and Healthcare, Inc., but I'm going to refer to it as Wellsville Health throughout these arguments. This court should affirm the district court's decision to grant summary judgment to Wellsville Health. First, because the district court was right, but for the wrong reasons. Although the district court judge did apply the wrong standards of harm, unfortunately, but- By not applying the chilling standard? I'm sorry? How did the judge apply the wrong standard? The judge didn't really apply Muldrow at all. The Muldrow decision did come out before the district court's summary judgment order, and the district judge did cite Muldrow, but didn't really apply it in any way. You're saying because he went to the adverse, no adverse employment action? Well, with regard to the discrimination claim, the only thing that the district court judge did is say there was no constructive discharge, therefore, there's no adverse action, and it was like a paragraph in the order. You think he was wrong on that point? No, I don't think so. We're not really talking about constructive discharge anymore anyway, but I think he was correct that this was a resignation, it was voluntary, and I think based on the record that the court has before it today, even though the district court judge applied the wrong standard, this couldn't correct that until affirmed based on the record today, and the district court judge did admittedly also apply the wrong standard for retaliation. The White case doesn't require significant harm. I just heard you discussing the standard. It's materially adverse action that would dissuade a reasonable person from complaining. That's the standard that should have been applied, but again, this court has a record before it that would allow the court to correct that and still affirm, and as you all, I'm sure, are very well aware, this court has a preference for affirming, if you can, with the record before you, and it's our contention that you can do that and correct what the district court did. In addition, no reasonable jury could find that the facts of this case meet the standard of harm under either Muldrow for the discrimination claim or Burlington Northern versus White for the retaliation claim. And finally, and perhaps maybe most importantly, the appellant forfeited her arguments with regard specifically to her discrimination claim and waived plain error on appeal by not briefing it until the reply brief. That was the first time the plain error argument was raised. On the discrimination claim. On the discrimination claim, that's correct. It's specifically with regard to an element of the prima facie case of discrimination, the element of whether or not there was an inference of discrimination, that was not briefed before the district court. The employer, the appellee and defendant, briefed it. That was something that was in the summary judgment motion, but the appellant did not respond to that. And the district court also didn't pass upon it. And there's case law saying, sometimes when a district court passes on an issue, even if it's not briefed, of course, it might not be forfeited, but here that didn't happen. District judge did not address the inference of discrimination element, instead finding that there was no adverse action. So, granted summary judgment on a different element of the prima facie case. So, it's been forfeited, and I think the plain error argument has been waived. So, this court could just affirm on that basis on the discrimination claim. Could I back up?  On retaliation. Sure. Blaine argues that she was denied the opportunity to make a quote unquote graceful exit from the workplace. Was that argument presented in district court? So, let me look at my chart because it is a little confusing. On the retaliation adverse action question, the argument before the district court was, they said that her employment was terminated rather than allowing her to work through her resignation date. The district court judge basically addressed it as an accelerated final day and constructive discharge claim. And so now, that has changed a little bit, the not saying goodbye to residents. At the district court, they were just arguing she was terminated and wasn't allowed to work through her last day. This whole question about whether she was allowed to say goodbye to residents, the first time that that was raised was in this appeal. So, you're saying it was forfeited? Yes. The graceful exit argument. Correct. I'm sorry, that was a long way to get to yes. The answer is yes. It's been forfeited and again, the plain error argument wasn't made until the reply brief. So, if you'd like to stay on the retaliation claim, I can move on to that. I have other arguments for the discrimination claim. What I will say, one thing that was not briefed at all before the district court was the employer's defense of showing non-discriminatory reasons for the actions it took or pretext. Not briefed at all, but was briefed on appeal. So again, those arguments have been forfeited. But moving on to the retaliation. Any evidence in the record that she was prohibited from saying goodbye to the people she knew at work? No. Thank you. So, what did happen is she, as you noted, she provided a resignation letter. She said her last day would be in two weeks and after a few days, Wellsville Health said, we don't need you here anymore. We'll pay you through your last day. We'll even pay you for PTO, even though you didn't give the requisite notice. She was supposed to give 30 days. She only gave two weeks. They said, that's okay, we'll pay you for all of it and they did. So, with regard to the retaliation claim, which seems to be the court's focus today, it doesn't meet, the adverse action claim here just does not meet the standard of harm for retaliation. As you mentioned, the standard after white is a materially adverse action that would dissuade a reasonable employee from complaining of discrimination. Muldrow did not change that. Muldrow, in fact, noted that the purposes of the anti-discrimination provision and the anti-retaliation provision, they're entirely different. So, the purpose of the anti-retaliation provision is the test was meant to capture those employers, those employer actions serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination. Muldrow says that, that's a direct quote. Whereas, the purpose, again, Muldrow, the anti-discrimination provision, we explained, simply seeks a workplace where individuals are not discriminated against because of traits like race and sex. Is there any helpful case law, either 10th Circuit or otherwise, that applies that standard to a situation like we have here? What, again, is it paid leave, is it administrative leave, whatever it is, but you're paying someone, telling them they can't be there, but you're paying them until the end. Is there any guidance out there? Yes, there is. And I did not include this in my brief, and I'm happy to supplement. There's a case, it's called Gopal versus University of Connecticut. It's a District of Connecticut case from March 31st of 2025. It actually applies the some harm standard. So, it sort of addresses your point. That was- Can you say the name one more time? Gopal, G-O-P-A-L. And what I like about that case is that it, I was looking for post-Muldrow cases that were analogous in any way to this case, right? Because I think that standard is a little bit confusing. And in that case, they gather cases regarding paid leave. Because I, too, that's where my brain went. The closest analogy I could find in the case law to what happened here is paid administrative leave. So, that case in particular gathers cases and how they've been treated post-Muldrow. Now, again, that's the discrimination standard, but I think it's still informative because courts are divided about whether or not paid administrative leave even meets the Muldrow standard of some harm. It is very context-specific. The Gopal decision, actually, I thought was interesting because in that case, the court noted that the employee was put on paid administrative leave pending an investigation into misconduct by that employee. Now, I want to be clear, there's no allegations of misconduct by Ms. Blaine. But I think it is a bit analogous in that, in that case, they said, allowing employers to take responsible steps, particularly in the case of a university and public sector employer, to protect against any ongoing misconduct by the employee under investigation without, and it doesn't render the employee worse off. They recognize that the employer has a duty to protect itself, its employees. And so, why I think that's analogous to this case is when you have an employee resign, this is very common, especially when someone is saying they're unhappy with the work environment, don't want to be there, to say, okay, you don't have to work out your two weeks because the employer needs to protect their data, protect their employees. In this case, protect residents of a nursing home. Was there any evidence that this is the course that they took with other employees? That is, if someone was going to separate employment, they would say, well, that's fine, but why don't we make this your last day? We'll pay you for a little bit further. Is that a common practice there? Is there any evidence of that, or is there any evidence that that's the industry practice? No, there's not. I don't have evidence that it's an industry practice. I don't have evidence of, like statistical evidence of that happening. I don't know that this company is maybe big enough to have that kind of statistical evidence, but what I do have is deposition testimony from the administrator, Jill McCoy, which that is in the supplemental appendix. That was not argued below because their arguments changed so much that that's not evidence that was presented before the district court, but you have it in the supplemental appendix to the extent you want to read her deposition, and her point was, we have had other employees who we allowed to work out their notice period, but the reason for those employees working out their notice period is we didn't have a replacement, and in this case, according to, again, this is the administrator of this nursing home, said we had a replacement for Ms. Blaine, so we didn't need her to work out the two weeks. So to answer your question, no statistical evidence, but I think that is a reasonable answer. It's anecdotal. It is anecdotal, you're right, you're correct, but that it is coming from the administrator who had been there for many years and knows what had occurred in the past with their employees. I'm sorry to interrupt you, but can I ask you about the retaliation claim with regard to the disposition? As I understand it, in your first 30 seconds, you acknowledged that the district court had applied the wrong standard, and this issue, as I understand it, wasn't really briefed in district court by either side about whether or not the inability to continue to work throughout the remainder of the period would have killed another person from making the protected disclosure. Is that correct? Not quite. I think before the district court, it's changed just slightly. So before the district court, on the retaliation claim, if you look at pages 33 through 34 of their response to the summary judgment motion, I don't have the appendix pages before me right now, but if you look at those pages, they argue that they terminated her employment rather than allow her to work through her resignation date. That was their whole argument before the district court. Now they're saying, well, in addition to that, she didn't get to say goodbye to residents, and she didn't get to have this graceful exit. So that's how it's changed. Yeah, and maybe I misspoke, because that's exactly what I was trying to ask you. So in light of the fact that this argument wasn't presented in district court, because as you just explained, it's changed, to decide whether or not to affirm an alternative grant would typically consider three factors that are Elkins versus Comfort. And the first factor is whether or not the argument was presented both in district court and on appeal. That seems to cut against you, does it not? Because this argument was presented on appeal, but not in district court. Is that fair? That's fair, that's true. And so in order to affirm an alternative grant, we'd have to determine that the other two grants, that it was a question of law and the record was adequately developed, would outweigh that first factor in order for us to affirm on the retaliation plan. Otherwise, would you agree that we'd have to remand since the district court misapplied the standard? I think that's all correct. And the point I would make is that you do have a record before you, where you could correct the district court judge. And I know I'm over my time, so I assume you want me to answer your questions, though. Please finish your thought. Okay, and the district, you have a record before you where you can correct what the district court judge did. And based on that, you can affirm. Thank you. Okay, thank you. Thank you, Your Honors. First, I wanted to address the plain error standard. Counsel mentioned that this was not brought up until the reply brief, and therefore, this argument's waived. I don't have the case in front of me, but I know in 10th Circuit precedent, that's not the case. Which argument are we talking about? I'm just talking plain error in general. So the plain error argument. Right, but which argument in this case would the plain error standard be applied to? That would be applying to the retaliation standard, and then also the discrimination standard for harm, considering neither were applied appropriately in the district court. And so, I don't have the Yukon case. I have not seen that one, as counsel mentioned. One of the things they mentioned, counsel mentioned, was the comparators of. Well, before you move on to the second argument, I want to ask you about your first one. You said, you know, based on our precedent, that's just not true. I'm not aware of that. Now, we do have a lot of cases that very sensibly say, well, if the appellant has a colorable good faith argument that this was preserved, and the appellee argues in response that it wasn't preserved, you can certainly argue in the alternative in your reply brief, oh, we think because of this reasonable argument that we preserved it. We're gonna stick by that, but in the unlikely event that you buy this hogwash from the appellee, we would argue plain error. But are you saying that you, on the discrimination claim, that you have a reasonable argument that this was preserved, even though you really never presented this theory? Well, I think, one, in the interim, the law changed, right? And, you know, there's 10-circuit precedent that says we were gonna apply the current law at the time of the appeal. And two, as far as, again, I don't have the case law in front of me, but I believe that there's case law that states that a plain error can be presented in a reply brief. So, if there's some, I'm happy to supplement there as well. I'm not asking you to supplement. I thought I heard you say something along the lines that it may be preserved because the district court itself passed upon the question. Correct. Is that what you're saying? That is one of the things that I'm saying. They held that for there to be harm, there needs to be monetary harm. I think both White and Muldrow state that that's just not the case. That's not the standard that's necessary. In White, there was a paid leave, a paid suspension. They held that that would be actionable retaliation. One other thing before I close, counsel mentioned comparators. Here, I think that the circumstantial evidence that we used, district court used here, is testimony by Scott Averill that said, we got rid of Jennifer. We decided to let her go because she was unhappy due to these complaints of harassment. That's arguably direct to evidence of retaliation, not necessarily us using comparators. So, we request that this be reversed and remain into the district court. Thank you for your time. Thank you, counsel. Thank you. The case will be submitted and counsel excused.